COMMONWEALTH of Kentucky, ex rel. A.B. CHANDLER III, Attorney General, Appellant,

v.

KENTUCKY TITLE LOAN, INC. d/b/a Cash Loans of Louisville d/b/a Cash Loans of Bowling Green, Appellee.

No. 1998–CA–000326–MR.

Court of Appeals of Kentucky.

June 11, 1999.

Rehearing Denied Sept. 10, 1999.

Discretionary Review Denied by Supreme Court May 10, 2000.

A.B. Chandler III, Attorney General, James C. Shackelford, Assistant Attorney General, Frankfort, KY, for Appellant.

Paul E. Sullivan, Keith Moorman, Brent L. Caldwell, Stephen G. Amato, Lexington, KY, for Appellee.

Before: BUCKINGHAM, COMBS, McANULTY, Judges.

## OPINION

COMBS, Judge:

The Commonwealth of Kentucky *ex rel.* A.B. Chandler III, Attorney General (the Attorney General), appeals from the judgment of the Fayette Circuit Court which held that Kentucky Title Loan, Inc. (KTL) fell within the scope of the definition of "pawnbroker" as set forth in KRS 226.010. Accordingly, the court dismissed the action brought by the Attorney General against KTL.

On July 16, 1996, the Attorney General filed a complaint against KTL, alleging that it was operating its business in violation of KRS 288.420 and KRS 288.620. KRS 288.420 requires a person engaged in making loans for $15,000.00 or less to obtain a license from the commissioner of financial institutions. KRS 288.620 prohibits any person from receiving "any in-

terest, discount or consideration greater than six percent(6%) per annum" on any loan of $15,000.00 or less.

The Attorney General also claimed that KTL "engaged in a pattern of practice" whereby it charged consumers interest rates that violated KRS 360.010, which set forth the legal rate of interest, and that this practice was unconscionable and unfair under KRS 367.170. In addition, the complaint asserted that the interest and fees charged by KTL did not bear any relationship to the actual costs of servicing the loan or storing property. The Attorney General sought to have the court declare void all the loans made by KTL; to order KTL to forfeit the principal, interest, and fees it had collected through these allegedly illegal transactions; and to impose civil penalties upon KTL.

In response to the Attorney General's complaint, KTL maintained that it was a pawnbroker as defined by KRS 226.010 and that it was operating its business in accordance with the statutes governing pawnbrokers set out at KRS Chapter 226. KTL engaged in quasi-pawn transactions commonly referred to as "title pledges" by advancing money to customers on "deposit" of their motor vehicles. However, customers did not actually deposit their cars with KTL but were allowed to retain physical possession of their vehicles. In lieu of relinquishing actual possession of a car, a customer gave KTL: a set of keys to the vehicle; the original certificate of title to the vehicle; and an executed document for power of attorney, which would enable KTL to complete transfer of ownership of the vehicle to itself if the customer should breach the pawn agreement. KTL's lien on the vehicle was then recorded with the county clerk, and the customer was issued a title evidencing the lien. Upon the customer's fulfillment of the pawn agreement, KTL would release the lien on the vehicle and return the keys to the customer. KTL customarily charged its customers 2% interest per month and fees of 20% per month on the unpaid balance. KTL main-

tained that its interest rate and fees were in compliance with KRS 226.080, the statute governing the interest rate and fees of pawnbrokers.

The Attorney General argues that KTL was not a pawnbroker because it did not make loans "on deposit of personal property." Essentially, the Attorney General contends that KTL has invoked the subterfuge of a "pawnbroker" while in reality it was engaging in the business of making loans of $15,000.00 or less without obtaining a license as required by KRS 288.420 as well as charging fees in excess of the rates set out in KRS 288.620 and KRS 360.010. Construing the 20% fees as interest, the Attorney General maintains that KTL was actually making consumer loans on which it was charging interest equivalent to an interest rate of 264% or more per annum when its combined fees or finance charges were analyzed pursuant to the Federal Truth in Lending Act.

The Attorney General moved for summary judgment or a temporary injunction against KTL. On January 8, 1998, the circuit court entered an order and opinion denying the Attorney General's motion and finding that KTL was indeed a pawnbroker as defined by KRS 226.010. On the same date, the court entered an order dismissing the claim against KTL except for that portion relating to whether the actual fees charged by KTL were reasonable in relation to their costs. This appeal followed.

■ The issue on appeal is whether KTL is a pawnbroker. Resolution of this issue is determinative of whether KTL's actions were illegal pursuant to KRS 288.420, KRS 288.620, and KRS 360.010. KRS 226.010 defines pawnbroker as:

Any person who loans money *on deposit* of personal property, or who deals in the purchase of personal property on condition of selling the property back again at a stipulated price, or who makes a public display at his place of business of the sign generally used by pawnbrokers to

denote their business, or who publicly exhibits a sign advertising money to loan on personal property or deposit is a pawnbroker. (Emphasis added.)

KRS Chapter 226 does not provide a definition or an explanation of the phrase "on deposit of personal property" as used in this chapter. The distinction between a pawnbroker and someone engaged in the business of making small loans is explained in 53A Am.Jur.2d *Moneylenders and Pawnbrokers* § 3 (1996) at 723:

> A pawnbroker is to be distinguished from one engaged in the business of making small loans upon security of chattel mortgages or wage assignments. Where, under the controlling statutory definition, a pawnbroker must be engaged in the business of receiving property in pledge or as security for money or other things advanced, one who lends money and takes as security a mortgage on real or personal property, stocks, bonds, notes, and other like things is not a pawnbroker.

The maximum interest rate and service charge that a pawnbroker may charge is set forth in KRS 226.080:

> Any pawnbroker, as defined in KRS 226.010, may, in *loaning money on deposit of personal property*, charge, contract for or receive interest at a rate not exceeding two percent (2%) per month on the unpaid principal balance of the loan, and may charge, contract for and receive a reasonable fee, not to exceed one-fifth (⅕) of the value of the loan per month, for investigating the title, storing and insuring the property, closing the loan, making daily reports to local law enforcement officers and for other expenses, losses and incidental costs associated with servicing such loans. It is further provided that such fee when made and collected shall not be deemed interest for any purpose of law. No pawnbroker shall directly or indirectly charge, receive or contract for any interest or consideration greater than that

allowed by this section. (Emphasis added.)

KTL argues that it is a pawnbroker pursuant to KRS 226.010 because it advances money on the deposit of customers' personal property (car titles) and it displays a sign advertising loans on deposit of personal property. However, the Attorney General counters that KTL does *not* meet the definition of pawnbroker as it does not advance money *on actual deposit* of personal property. In order to charge the interest rate and fees provided for in KRS 226.080, the Attorney General argues that the phrase "on deposit of personal property" requires the customer to place the item of personal property in the actual physical custody of the pawnbroker.

This is a case of first impression in Kentucky, and the trial court cited an analogous case from Alabama for guidance in reasoning its way to a decision. In denying the Attorney General's motion for summary judgment and dismissing the complaint, the court relied upon *Floyd v. Title Exchange and Pawn of Anniston, Inc.*, 620 So.2d 576 (Ala.1993). In that case, the Supreme Court of Alabama held that car title pledges were pawn transactions, concluding that the statutory definition of a "pawn transaction" *did not specifically exclude* this type of transaction and that it was broad enough to encompass the practice of allowing customers to retain physical possession of pledged property. In pertinent part, a "pawn transaction" is defined by Alabama law as "[a]ny loan on the security of pledged goods...." Ala.Code § 5–19A–2(3) (1975). In the case before us, the circuit court was persuaded that the reasoning of *Floyd* was applicable to the Commonwealth's statutes on pawnbrokers.

However, we find a significant difference between the Kentucky and Alabama statutes with respect to the breadth of the definition of a pawn transaction. KRS 226.010 and KRS 226. 080 use the prepositional phrase "[loan or loaning] money *on deposit of personal property*" (emphasis

added) whereas the Alabama legislature has adopted a less restrictive and less specific adjective, "loan on the security of *pledged* goods"—which clearly has the potential for encompassing a wide range of transactions. Thus, while the analogy is helpful, we do not find the reasoning in *Floyd* to be controlling as to our Kentucky statutes on point.

KRS 446.080(4) directs that "[a]ll words and phrases shall be construed according to the common and approved usage of language...." Moreover, "[w]hen language is clear and unambiguous, it will be held to mean what it plainly expresses." *Hawley Coal Co. v. Bruce*, 252 Ky. 455, 67 S.W.2d 703, 705 (1934). In KRS Chapter 226, the phrase "on deposit of personal property" is used repeatedly to define and to describe a pawn transaction. We must, therefore, construe this phrase according to the common, plain meaning of the word *deposit*.

Black's Law Dictionary 526 (4 th ed.1968) defines *deposit* in the following manner:

> **Deposit**, v. To commit to custody, or to lay down; to place; to put; to let fall (as sediment); . . . .
>
> **Deposit**, n. A naked bailment of goods to be kept for the depositor without reward, and to be returned when he shall require it. . . .

As used in Chapter KRS 226, *deposit* clearly requires that personal property be relinquished by its owner and committed to the physical custody of the pawnbroker. In its car title pledge transaction, KTL obtains only a *lien* on the customer's car—not physical possession of the vehicle. This procedure amounts to a secured loan rather than a true pawn pursuant to KRS Chapter 226. Furthermore, among its reasons authorizing pawnbrokers to charge the high fees (20% of the unpaid principal balance), KRS 226.080 explicitly cites the purpose of *"storing and insuring* the property...." (Emphasis added). Thus, pursuant to the unambiguous statutory language, the pawnbroker must have

*actual physical custody* of the personal property—not merely constructive possession—in order to charge the interest and fees set out in KRS 226.080.

In summary, we hold that KTL was not a pawnbroker as defined by KRS 226.010. Hence, it was not exempt from application of KRS Chapter 288 and it operated its business in violation of KRS 288.420, KRS 288.620, and KRS 360.010. As to the allegations that KTL's business practices violated KRS 367.170 of the Consumer Protection Act, we refrain from addressing this issue as the circuit court did not. Upon remand, we direct the circuit court to address this issue.

For the foregoing reasons, we vacate and remand the order of the Fayette Circuit Court for entry of judgment consistent with this opinion.

McANULTY, Judge, concurs.

BUCKINGHAM, Judge, concurs by separate opinion.

BUCKINGHAM, Judge, concurring:

I concur with the majority opinion but do so for a slightly different reason. The majority opinion states that the issue is whether KTL was a pawnbroker and resolves the issue by determining that it was not. However, the Attorney General conceded in his argument of this case that KTL met the definition of "pawnbroker" as that term is defined in KRS 226.010. It likewise appears to me that KTL met the "pawnbroker" definition. Nevertheless, I agree with the majority opinion that KTL could not charge interest pursuant to KRS 226.080, since that statute should be construed as requiring the actual deposit of automobiles and not merely the deposit of keys and titles.