The sole issue presented by this appeal is whether a person can pawn an automobile certificate of title and retain possession of the automobile. The answer depends on whether the legislature intended an automobile certificate of title to be "tangible personal property," within the meaning of the Alabama Pawnshop Act[1] enacted in 1992.
The supervisor of the Bureau of Loans of the State Banking Department took the position that the business transaction was not a "pawn transaction," but was a small loan transaction governed by the provisions of Alabama's Small Loan Act. The trial court held that an automobile certificate of title was not a chose in action, and that the provisions of the Alabama Pawnshop Act were broad enough to permit a customer to give constructive possession of the automobile to the pawnbroker, while retaining physical possession of it. The court, therefore, ruled against the State Banking Department. We affirm, because we hold, as *Page 577 
did the trial court, that the legislature has not prohibited the pawning of an automobile certificate of title.
Title Exchange and Pawn of Anniston, Inc., is a Georgia corporation that was qualified and licensed to do business as a pawnbroker in Anniston, Alabama, before the enactment of the Alabama Pawnshop Act, which became effective on May 21, 1992. Title Exchange has voluntarily limited its business to the pawning of automobiles and automobile certificates of title.
Title Exchange's business operation can be typically described as follows: The customer goes to Title Exchange, and if the parties can agree, the customer endorses his or her automobile certificate of title in blank and delivers it and the keys to the automobile to Title Exchange for an amount of money not exceeding $750.00, the customer agreeing to repay the amount within a period not exceeding 12 weeks. The customer is permitted to keep actual possession of the automobile during the period, and most customers do keep the automobile. The customer incurs no extra charge for being allowed to keep the automobile. No fees are charged other than those allowed by law to be charged for a pawn transaction, and Title Exchange has no right of action against the customer for any money lent other than its right to sell the automobile, as permitted by a repossession agreement and a pawn ticket that the customer signs. If a customer defaults on the agreement and Title Exchange is unable to collect the amount due, Title Exchange repossesses the automobile and sells it.
Robert K. Floyd, supervisor of the Bureau of Loans of the State Banking Department, oversees all pawn activities in Alabama. After the Pawnshop Act became law, he notified Title Exchange that, in his opinion, its practice violated the Act. Title Exchange voluntarily ceased its operation and sued Floyd and the attorney general, seeking a judgment declaring that the Act did not prohibit its practice; it also sought a temporary restraining order and a preliminary injunction to prevent the closing of its business until a hearing could be held and the declaratory judgment could be entered. Floyd answered the complaint, contending that an automobile certificate of title was not "tangible personal property" within the meaning of the Act.[2] *Page 578 
After a hearing, the trial court dismissed the attorney general as a party, granted the declaratory relief sought by Title Exchange, and permanently enjoined Floyd from trying to prevent Title Exchange's practice. Floyd appeals.
Floyd argues that Title Exchange's business practice is not a "pawn transaction" under the Pawnshop Act, and, therefore, that Title Exchange is violating the provisions of the Small Loan Act, Ala. Code 1975, §§ 5-18-1 through -24.[3] Particularly, Floyd argues that Title Exchange makes small loans without a license and charges excessive rates of interest.[4]
A "pawn transaction" is "[a]ny loan on the security of pledged goods or any purchase of pledged goods on condition that the pledged goods are left with the pawnbroker and may be redeemed or repurchased by the seller for a fixed price within a fixed period of time." § 5-19A-2(3). Sale or "leaseback" transactions are specifically excluded. Id. "Pledged goods" are "[t]angible personal property other than choses in action, securities, or printed evidence of indebtedness, which property is purchased by, deposited with, or otherwise actually delivered into the possession of a pawnbroker in connection with a pawn transaction." § 5-19A-2(6).
Our legislature did not specifically state what it meant by the words "tangible personal property" in the Act, as the legislatures of some other states have done.[5] "Tangible" means "[c]apable of being touched and seen." Black's Law Dictionary
1456 (6th ed. 1990). "Personal property" generally includes "all property other than real estate." Id. at 1217. Broadly speaking, "property" includes "every species of valuable right and interest." Id. at 1216. Thus, the phrase "tangible personal property" has been defined as "personal property, palpable, susceptible to the sense of touch, capable of ownership, and endowed with intrinsic value." Pagliarulo v. National ShawmutBank, 353 Mass. 449, 450, 233 N.E.2d 213, 214 (1968).
The trial court, although it questioned whether a certificate of title could be classified as "tangible personal property," nevertheless concluded that the transaction was a "pawn transaction" within the meaning of the Alabama Pawnshop Act, because Title Exchange had at least "constructive possession" of the automobile.
The trial judge entered conclusions of law, which included the following:
 "A certificate of title is clearly, and is perhaps nothing more than, 'evidence of title.' It is prima facie evidence of ownership. It is not, at least under a traditional analysis, a chose in action — even in that term's broadest sense.
 "Whether a certificate of title is 'tangible personal property' in a strict legal sense is also questionable, as it has no intrinsic value. However, it is clear to *Page 579 
the court that the business transaction under review herein is not prohibited by the Act. The language of Act 92-597 is sufficiently broad to encompass the practice of allowing a customer to retain physical possession of the pledged property with the pawnbroker retaining 'constructive possession' through exercise of actual physical possession of a set of keys and the endorsed, negotiable certificate of title to it. Whether actual physical possession of the personal property itself is necessary to retain a perfected, superior lien in the property is not an issue before the court.
 "Had the Legislature intended to prohibit the practice under review herein, it could have specifically so stated. Absent a clear legislative intent to prohibit such a practice, this Court [must] find that the practice is not proscribed by Act 92-597. . . . [T]o make a previously lawful act unlawful, the Legislature would have to do so by clear, intentional language. No such language or intent appears within the four corners of the Act adopted."
We agree with the trial court that it is questionable whether an automobile certificate of title is "tangible personal property," as that term is generally understood, but we also agree with the trial court that an automobile certificate is not a "chose in action," which the legislature specifically excluded from the definition of "pledged goods."[6]
The supervisor of the Bureau of Loans, in his brief and at oral argument, insisted strongly that Title Exchange's business practice should be regulated under the provisions of Alabama's Small Loan Act. If our interpretation of the Alabama Pawnshop Act is incorrect, the legislature, of course, can easily amend the Act so that there will be no doubt in the mind of the lender or the regulator as to what the legislature intended.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
ALMON and SHORES, JJ., dissent.
[1] Act No. 92-597, Ala. Acts 1992; Ala. Code 1975, §§ 5-19A-1
through -20 (Supp. 1992).
[2] The supervisor specifically set forth his official position regarding the taking of automobile titles in pawn:
 "10. A 'title' whether it be an 'automobile title' or some other type of 'title' is not 'tangible personal property' within the meaning of the Alabama Pawnshop Act, but is mere evidence of right to possession. When a 'title' is held by someone other than the person having the possession of the actual property to which the 'title' applies, then the 'title' is either a 'chose in action' or an 'evidence of indebtedness.' The taking of an 'automobile title' in pawn, as Title Exchange and Pawn states that it has done for years, amounts to nothing more than the making of a secured loan. Banks, credit unions, and licensed loan companies in Alabama make such loans routinely. They require title to be held by them, and many require a set of keys for repossession purposes.
 "11. It is a matter of common sense that an 'automobile title' is not 'tangible personal property' separate and apart from the actual automobile to which [it] applies. Title Exchange and Pawn cites no cases to the contrary. It is doubtful whether contrary cases exist anywhere. In any event, should an 'automobile title' be deemed to be 'tangible personal property' within the meaning of the Alabama Pawnshop Act then every lender in the State of Alabama, whether a bank, a credit union, or a loan company would be foolish not to obtain a pawnshop license and conduct all of their consumer lending operations as 'pawn of title' transactions. If an 'automobile title' is 'tangible personal property' then so would be title to a stereo, a guitar, a washing machine, and virtually any other item of personal property a potential borrower might have.
 "12. When a person 'pawns' an item they leave it with the pawnbroker; they do not take it with them and they do not have to pick it up and pay the pawn charge if they do not want to. This is what makes pawnbrokers different from other lenders and this is why pawnbrokers are permitted to charge substantially higher rates. It may be assumed that a person who can leave an item in pawn for a period of time can do without that item. No similar assumption can be made with respect to an automobile which may be used by such a person as transportation to and from work and which is, in any event, a necessity for most borrowers."
Appellant's brief, pp. 4-5.
The supervisor says that if a bank, a credit union, or a licensed loan company were to charge 300% A.P.R. on a secured loan it would be unconscionable. The supervisor argues that the pawnbrokers are entitled to the pawnshop rate of 300% A.P.R. only on legitimate pawn transactions and that if they are going to make secured loans then they should obtain either a Mini-Code, Ala. Code 1975, § 5-19-1 et seq., or a small loan license and should charge only Mini-Code or small loan rates.
[3] A "bona fide pawnbroking business" is exempt from the Small Loan Act. § 5-18-4(b).
[4] The Small Loan Act permits an interest rate of either two or three percent per month, depending on the amount of the unpaid balance, § 5-18-15(a), whereas the Pawnshop Act permits a charge of 25% of the principal amount per month. § 5-19A-7(a).
[5] The Georgia legislature, for example, specifically defined "pledged goods" to include automobile certificates of title. Section 44-12-130 of the Georgia Code provides, in part:
 " 'Pledged goods' means tangible personal property, including, without limitation, all types of motor vehicles or any motor vehicle certificate of title, which property is purchased by, deposited with, or otherwise actually delivered into the possession of a pawnbroker in connection with a pawn transaction. However, for purposes of this Code section, possession of any motor vehicle certificate of title which has come into the possession of a pawnbroker through a pawn transaction made in accordance with law shall be conclusively deemed to be possession of the motor vehicle, and the pawnbroker shall retain physical possession of the motor vehicle at any time. 'Pledged goods' shall not include choses in action, securities, or printed evidences of indebtedness."
[6] Ala. Code 1975, § 5-19A-2(6), reads:
 "Pledged goods. Tangible personal property other than choses in action, securities, or printed evidences of indebtedness, which property is purchased by, deposited with, or otherwise actually delivered into the possession of, a pawnbroker in connection with a pawn transaction."