Sidney Rossuck, Lorraine Rossuck, Todd W. Rossuck, Brett G. Rossuck, and Judd F. Rossuck sued Curtis O. Duncan and Joyce R. Duncan, alleging that the Duncans had breached a contract to purchase real estate from the Rossucks. The Duncans counterclaimed, alleging that the Rossucks had breached the contract. Following an ore tenus proceeding, the trial court entered a judgment for the Rossucks, awarding damages of $16,500 and $6,600 in attorney fees. The Duncans appeal.
Because this was an ore tenus case, the trial court's findings of fact are favored with a presumption of correctness and its judgment based upon those findings will not be disturbed on appeal unless it is shown to be plainly and palpably wrong. Cobbs v. Fred Burgos Constr. Co., 477 So.2d 335
(Ala. 1985).
The record reveals that the Duncans signed a contract to buy a converted house from the Rossucks for $148,000. The contract stated, in pertinent part:
 "This contract is subject to Purchaser being able to obtain a suitable loan in the Approx. Amt of $118,400. The Purchaser agrees to exert all reasonable effort and diligence to obtain such loan and to make application for such loan within 10 days."
When the parties signed the contract, the Rossucks advised the Duncans that the term "suitable financing" meant that they must do their best to obtain the financing to purchase the real estate. The closing date was set for August 15, 1990. The Duncans thereafter sought financing at seven institutions, although they applied in writing only to the Bank of Albertville. Because of the Duncans' difficulty in arranging financing, the Rossucks agreed to extend the closing date for 10 days and also arranged for the Duncans to assume an existing mortgage on the property in the approximate amount of $79,349. The Bank of Albertville initially agreed to lend the Duncans the remainder of the purchase price, provided that they pledge additional property as security for the loan. The Duncans were unwilling to comply with this condition; thus, the bank refused the loan. The Rossucks then sent a letter to the Duncans, offering to lend them the needed amount "upon the same or more favorable terms as requested of Bank Of Albertville." The Duncans would not agree to this loan; the Rossucks then sued, alleging that the Duncans had refused to diligently obtain financing as required by the purchase contract.
The Duncans first argue that the parties did not have a meeting of the minds as to the meaning of the term "suitable financing" and that the contract is therefore based on ambiguous terms and should be held void.
Whether a contract is ambiguous is a question of law for the trial court to determine. MacDonald v. U.S. Die Casting Development Co., 585 So.2d 853 (Ala. 1991). In its order, the trial court did not find any ambiguity in the term "suitable financing." The record shows that when the Duncans sought financing from the Bank of Albertville, they specified their own terms in the written application and thus tailored their application to reflect what they considered to be a "suitable" loan. In its order, the trial court found that the Rossucks had offered financing to the Duncans according to terms that were identical to, or even better than, the Duncans' own terms set out in the Bank of Albertville loan application. The evidence contained in the record supports the trial court's conclusion that the term "suitable financing" was not ambiguous.
The Duncans next argue that, because the "suitable financing" provision was a contingency that did not come to fruition, their duty to perform under the contract never arose.
This Court has previously held that a contract provision making the contract subject to the procurement of a loan to finance the purchase price is a valid condition precedent to performance; however, the purchasers have the implied duty to attempt to obtain financing through a reasonable good faith effort. Schottland v. *Page 1315 Lucas, 396 So.2d 72 (Ala. 1981). In this case, this duty was an express part of the contract. Whether a party has substantially performed a promise under a contract is a question of fact to be determined by the circumstances of each case. Cobbs v. FredBurgos Constr. Co., supra.
In its order, the trial court specifically found that the suitable financing provision was a valid condition precedent to performance under the contract; however, the court found that the Rossucks offered such financing to the Duncans, and that the Duncans refused the financing solely because they wished to be relieved from performing under a contract that they had become disenchanted with. The Duncans' own testimony contained in the record fully supports the trial court's findings; thus, we find no merit in the buyers' argument on this point.
The Duncans next argue that their duty to perform under the contract ended on August 15, 1990, the original closing date set out in the contract, and that they were thus not obligated to accept the loan offered by the Rossucks in a letter dated August 25, 1990.
The purchase contract contains the following provision:
 "This contract states the entire agreement between the parties and merges in this agreement all statements, representations, and covenants heretofore made, and any other agreements not incorporated herein are void and of no force and effect."
This provision notwithstanding, under Alabama law a written agreement may be modified by a subsequent oral agreement of the parties, unless some statutory provision provides otherwise.Hall v. Integon Life Insurance Co., 454 So.2d 1338 (Ala. 1985). This is so even where the contract contains a requirement that all modifications be in writing. Commercial Contractors, Inc.v. United States Guaranty Co., 524 F.2d 944 (5th Cir. 1975) (applying Alabama law). Moreover, it is a general rule of equity that when time is not of the essence in a contract, a failure to perform in the time specified does not serve to terminate the rights of the parties. Sims v. City ofBirmingham, 254 Ala. 598, 49 So.2d 302 (1950). An oral agreement to extend the time for performing a previous agreement merely supplements, rather than changes, the terms and obligations of the agreement. Cater v. Haralson,362 So.2d 242 (Ala.Civ.App.), cert. denied, 362 So.2d 244 (Ala. 1978).
The contract contained no provision making time of the essence, and it is uncontroverted that the Duncans fully agreed to an extension of the closing date to allow themselves more time to search for financing. Thus, the trial court properly determined that the Duncans' duty to perform under the contract did not end until the expiration of the extended closing period.
The Duncans' final argument is that the trial court's damages award was arbitrary and not supported by the evidence. The contract provides:
 "Should the Purchaser fail to carry out his contract, in accordance with all its provisions, the Seller should have the option to do one of the following:
 "1. The Seller may declare the Purchaser in default and proceed against the Purchaser for the recovery of all damages incurred by the Seller as a result of the Purchaser's breach of contract including a reasonable attorney's fee, in which event the Agent shall be entitled to his commission. The earnest money herein mentioned shall be applied to legally ascertained damages.
 "2. The Seller may reaffirm the contract and proceed for specific performance, in which event the Agent shall be entitled to his commission.
 "3. The Seller may accept the earnest money as shown herein as liquidated damages and the earnest money so forfeited shall be divided between the Seller and the Agent."
The measure of damages for the breach of a contract involving the sale of land is the difference between the contract price and the market value of the land on *Page 1316 
the date of the breach. Brett v. Wall, 530 So.2d 797 (Ala. 1988). Here, the record contains undisputed testimony from a qualified appraiser that in April 1992 he appraised the real estate and assessed its fair market value at $130,000. He further expressed the opinion that, based on the commercial real estate market conditions between August 1990 — the date of breach — and April 1992 and assuming no substantial improvement or deterioration, the value of the property would have been approximately the same in August 1990 as in April 1992. Subtracting the $130,000 fair market value from the purchase price of $148,000 leaves a total of $18,000, slightly more than the trial court's award of $16,500. The evidence also supports the amount of attorney fees awarded; accordingly, we find no reversible error in the trial court's award.
The trial court's judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, SHORES and ADAMS, JJ., concur.