The United States Bankruptcy Court for the Northern District of Alabama, Western Division, certified the following question of law to us:
 "Does the last sentence of Ala. Code § 7-9-403(6) mean that a financing statement perfecting a security interest in a pre-1990 mobile home lapses after 5 years under Ala. Code § 7-9-403(2) where the financing statement does not state specifically that it will remain effective until a termination statement is filed or, contain other indicia *Page 430 
of the maturity date of obligation beyond the 5-year period?"
The question of law presented is deemed determinative of three consolidated actions before the United States bankruptcy court for which there is no clear controlling precedent in the decisions of this Court. All three cases are adversary proceedings within the three debtor's reorganization cases under Chapter 13. Security Pacific Housing Services, Inc., is the creditor in all three cases. The Alabama Manufactured Housing Institute has filed a brief in support of the creditor.
The following pertinent facts were also provided by the bankruptcy court for our consideration.
 "Ms. McRae alleged in her complaint against Security Pacific Housing Services, Inc., that the creditor could not be classed as a secured creditor in her bankruptcy. Her complaint alleged the creditor's perfection lapsed because it had failed to renew the original Uniform Commercial Code Form-1 financing statement on the mobile home she purchased in 1985. Security Pacific Housing Services, Inc., contended that it is entitled to secured status because under the last sentence of Ala. Code 1975, § 7-9-403(6), the original UCC-1, filed October 3, 1985, in the Hale County Probate Office, would be effective until a termination statement was filed. However, the Chapter 13 Standing Trustee, as Intervenor, Plaintiff, argued in opposition to the creditor that the same last sentence of Code § 7-9-403(6) should be construed to the opposite effect in these cases. The Trustee, C. Michael Stilson, contended that an original financing statement on a mobile home will be effective until its termination only if the financing statement itself states this fact, or at least lists a maturity date for the loan. The original UCC-1 included in this file does not say it will remain effective until its termination nor does it list a maturity date for the loan.
 "Mrs. Johnson's complaint against Security Pacific also objected to the secured status of its claim because no continuation statement had been filed. Ms. Johnson entered into an installment sales contract to purchase her mobile home in 1985. The seller, Piggy Bank Mobile Homes, recorded a UCC-1 with the Tuscaloosa County Probate Office on August 13, 1985. It is not disputed that neither Piggy Bank nor Jefferson Federal Savings Loan, its first assignee, failed to file a continuation statement. Security Pacific is receiver for Jefferson Federal. It contends that the last sentence of Code § 7-9-403(6) means that such an initial UCC-1 on a mobile home remains valid until a termination statement is filed. C. Michael Stilson, the Chapter 13 Standing Trustee, argued to the contrary that the sentence should be interpreted in this way only if the UCC-1 so specified, or at the very least stated a firm maturity date for the loan. The UCC-1 in this case does not state it is valid until termination nor does it include a maturity date.
 "Mr. Degraffenried also filed a complaint objecting to the secured status of Security Pacific's claim, contending that the creditor was unsecured because it did not timely file a continuation statement. The original UCC-1 financing statement perfecting the security interest of Security Pacific's predecessor was filed with the Pickens County Probate Office on December 13, 1985. Mr. Degraffenried purchased the mobile home from Nationwide Mobile Homes which assigned its security interest to Jefferson Federal, and that interest is now assigned to Security Pacific. Security Pacific made the same argument on this point — that the last sentence of Code § 7-9-403(6) means that an original UCC-1 financing statement is valid to maintain perfection of a security interest in a mobile home until a termination statement is filed. C. Michael Stilson, the Standing Chapter 13 Trustee, again argued that the same statute means that the financing statement for a mobile home must state that it is valid until a termination is filed, or at least list the maturity date of the loan. Otherwise, he argued it would lapse after five years like most financing *Page 431 
statements perfecting security interests in collateral."
Section 7-9-403(2) reads as follows:
 "Except as provided in subsection (6), a filed financing statement is effective for a period of five years from the date of filing, or, where both (i) the collateral described consists only of consumer goods and (ii) the secured obligation is originally $2000 or less, then until the 30th day following any maturity date if specified in the financing statement. The effectiveness of a filed financing statement lapses on the expiration of the effective period unless a continuation statement is filed prior to the lapse. If a security interest perfected by filing exists at the time insolvency proceedings are commenced by or against the debtor, the security interest remains perfected until termination of the insolvency proceedings and thereafter for a period of 60 days or until expiration of the effective period, whichever occurs later; but when the effective period expires before the expiration of the 60-day period, the security interest remains continuously perfected beyond the 60-day period only if a continuation statement is filed before expiration of the effective period or a new financing statement is filed between the time of expiration of the effective period and expiration of the 60-day period. Upon lapse the security interest becomes unperfected, unless it is perfected without filing. If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse."
(Emphasis added.)
Section 7-9-403(6) reads as follows:
 "If the debtor is a utility (subsection (5) of section 7-9-401) and a filed financing statement so states, it is effective until a termination statement is filed. A real estate mortgage which is effective as a fixture filing under subsection (6) of section 7-9-402 remains effective as a fixture filing until the mortgage is released or satisfied of record or its effectiveness otherwise terminates as to the real estate. A financing statement covering a mobile home, other than a mobile home constituting inventory, remains effective, if it so states, until a termination statement is filed."
(Emphasis added.)
In resolving the question before the Court, we look to the historical perspective of § 7-9-403(6). The reason and necessity for a statute are relevant to its interpretation. Exparte Birmingham Board of Education, 601 So.2d 93 (Ala. 1992). As originally enacted, § 7-9-403 (Ala. Acts 1965, Act No. 549) made no mention of any special durational periods associated with financing statements. Neither were durational periods added by amendment or by the recodification in 1975. However, an amendment adopted in 1981 (Ala. Acts 1981, Act No. 81-311), provided for extending the duration for financing statements when the debtor is a utility "and a filed financing statement so states." The 1981 amendment also changed the language of § 7-9-302 from "motor vehicle required to be licensed" to "motor vehicle required to be registered."
The section was further amended in 1984 to allow for extended durational periods for mobile home financing statements. This amendment was apparently in response to three cases that were consolidated in In re Sewell, 32 B.R. 116
(Bankr.N.D.Ala. 1983), in which the United States Bankruptcy Court for the Northern District of Alabama concluded that purchase money security interests in each of the three creditor cases were not perfected because UCC-1 financing statements were not filed. That Court concluded:
 "It seems most likely to the court that the legislature did not intend to exclude purchase money security interests in mobile homes from the filing requirements of U.C.C. Section 9-302(1), while including those in automobiles and trucks. This conclusion is, of course, not without some element of doubt; however, the contrary conclusion would be subject to a great deal more doubt, as no logical reason for exclusion of such a purchase money security interests from the filing requirements of § 9-302(1) [or § 7-9-302(1)] is suggested or suggests itself. The court concludes that filing was required for the purchase money security interests involved in these cases." *Page 432 
Id. at 125.[1] The 1984 amendment added the last sentence to § 7-9-406(b), which is at issue here.[2]
The creditor argues that under § 7-9-403(6) a financing statement on a mobile home sold to a consumer that states it is covering a mobile home, remains effective until a termination statement is filed. Simply put, the creditor contends that, if the financing statement recites that the collateral is a mobile home, it is not subject to the five-year limitation of § 7-9-403(2). The debtors and trustee respond with the argument that § 7-9-403(6) requires that, in order for the financing statement to remain perfected after five years, it mustexplicitly state that it remains effective until a termination statement is filed or else must list a maturity date.
We cannot agree with the creditor that the mere mention of a mobile home in the description of the property on a financing statement would allow for an extended duration of the financing statement until a termination statement is filed. Such a holding would render the five-year search requirement of § 7-9-403(2) meaningless and would create a special class of lenders in this State. We do not believe it was the intent of the legislature in passing this amendment that all other non-purchase money consumer lenders in the State of Alabama should be subject to the five-year automatic termination rule of § 7-9-403(2), but mobile home manufacturers would not.
Under the creditor's position, the UCC's general rule regarding the duration of financing statements, § 7-9-403(2), would no longer have any application, because a person receiving notice by a filed financing statement would have to search the records for a period in excess of five years. And, if the mere use of the words "mobile home" were enough to extend the duration of the financing statement, a filed statement could constitute a lien on property other than the mobile home for a period in excess of five years. This would frustrate the UCC's general rule and provide unjust consequences. An example would be the financing statement in the case of debtor Degraffenreid, which states:
 "This financing statement covers the following types (or items) of property:
 "One used 1982 14 x 70 All American Mobile Home Serial 0215 Including All Furnature [sic] and Accessories contained there within."
Under the creditor's interpretation, a lien of unlimited duration would be imposed on the furniture and accessories in the mobile home merely because the financing statement recited the term "mobile home."
Under the rules of statutory construction, we must consider the statute as a whole and must construe the statute reasonably so as to harmonize the provisions of the statute.Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle,460 So.2d 1219, 1225 (Ala. 1984); Tate v. Teague,431 So.2d 1222, 1225 (Ala. 1983); Eagerton v. Terra Resources, Inc.,426 So.2d 807, 808 (Ala. 1982).
We therefore answer the question in the affirmative. The last sentence of Ala. Code 1975, § 7-9-403(6), means that a financing statement perfecting a security interest in a pre-1990 mobile home lapses after five years under § 7-9-403(2), if the financing statement does not state specifically that it will remain effective until a termination statement is filed or contain other indicia of the maturity date of the obligation beyond the five-year period.
QUESTION ANSWERED.
HORNSBY, C.J., and MADDOX, ALMON, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] First National Bank of Wetumpka, Ala. v. Sewell, 79 B.R. 36
(N.D.Ala. 1984), reversed the judgment In re Sewell.
[2] Although subsequent amendments were passed in 1987 (Ala. Acts 1987, Act No. 87-410) and 1991 (Ala. Acts 1991, Act. No. 91-593), they are inconsequential to this case. *Page 433