861 So.2d 1080 (2003)
Ex parte Jesse W. COLEMAN and Vera F. Coleman.
(In re Jesse W. Coleman and Vera F. Coleman v. Jerry Higginbotham et al.).
1010644.
Supreme Court of Alabama.
March 14, 2003.
*1081 LeRoy Alan Cobb, Anniston, for petitioners.
S. Dale Price, Sylacauga, for respondents.
JOHNSTONE, Justice.
This Court granted the petition for a writ of certiorari filed by Jesse W. Coleman and Vera F. Coleman to review the record to determine whether an alleged subsequent oral agreement between Vera Coleman as pledgor and Leigh Moore acting for her employer The Money Tree Outlet, Inc., as pawnbroker, modified a previously made written contract in the form of a pawn ticket. The Colemans' only meritorious claim of the existence of an oral modification of a contract is based on an alleged December 5, 1999 oral agreement between Vera and Leigh Moore acting for The Money Tree.

Procedural Facts
On January 21, 2000, the Colemans sued The Money Tree, Moore, and Jerry Higginbotham (another employee of The Money Tree) for conversion, fraud, conspiracy, breach of contract, and the tort of outrage. The Colemans alleged that The Money Tree wrongfully took possession of their 1995 Cadillac automobile, which the Colemans had pawned to The Money Tree. The Colemans asserted that the defendants had, by oral agreement, extended for 30 more days the December 5, 1999 maturity date of the last pawn ticket entered between The Money Tree and Vera and that the defendants had prematurely and wrongfully taken possession of the car before the expiration of that extended maturity date, January 4, 2000.
The defendants moved for summary judgment on the ground, among others, that the pawn ticket specifically prohibited *1082 oral agreements to extend the maturity date of the pawn. The defendants also argued, without submitting any proof, that they did not make any oral agreement to extend the maturity date of Vera's last pawn. Relying on Floyd v. Title Exchange & Pawn of Anniston, Inc., 620 So.2d 576 (Ala.1993), the defendants further argued that possession of the endorsed certificate of title to the Colemans' car by The Money Tree constituted constructive possession of the Colemans' car by The Money Tree and, therefore, that the defendants could not have wrongfully taken possession of the Colemans' car. While the record contains, as one of the Colemans' exhibits, a photocopy of the face of the Colemans' certificate of title, the record does not reveal any endorsement to The Money Tree. In support of the defendants' motion for summary judgment, the defendants submitted only the pawn tickets executed by the Colemans together and the pawn tickets executed by Vera alone.
In opposition to the summary judgment motion, the Colemans submitted an affidavit sworn by Vera. The Colemans also submitted the records maintained by The Money Tree of each pawn transaction between The Money Tree and the Colemans together or Vera alone.
After a hearing, the trial court entered summary judgment in favor of the defendants. The Colemans moved to alter, to amend, or to vacate the judgment. This motion was denied by operation of law. The Colemans timely appealed, and the Court of Civil Appeals affirmed without an opinion. Coleman v. Higginbotham, (No. 2000563, December 7, 2001) 852 So.2d 852 (Ala.Civ.App.2001) (table).

Substantive Facts
Beginning in May 1999, the Colemans together and then Vera singly entered into a series of pawn transactions with The Money Tree. The Colemans initially borrowed $500 and pawned the title to their 1995 Cadillac. In June 1999, the Colemans borrowed an additional $500 (for a total borrowed principal of $1,000) and repawned the title to their Cadillac. Thereafter, the Colemans together and then Vera singly repawned their car each month, with the agreement of The Money Tree, by paying the interest accrued for the particular month and by signing a new pawn ticket containing the terms of the pawn transaction. Each pawn ticket provided, in pertinent part:
"The pawnbroker can sell or keep the item if not redeemed by the specified maturity date. The length of the pawn transaction is 30 days and it can only be repawned with the agreement of both parties and only for 30 day incremental periods. This pawn transaction has a grace period of 30 calendar days following the maturity date of the transaction. In the event the last day of the grace period falls on a day in which the pawnbroker is not open for business, the grace period shall be extended through the first day following upon which the pawnbroker is open for business.
"....
"Verbal agreements for additional days are not binding.
"....

"This pawn transaction has a grace period of 30 calendar days when pawning a motor vehicle." (Some emphasis original and some emphasis added.)
On November 4, 1999, with the agreement of The Money Tree, Vera again repawned the Colemans' car in writing. The maturity date of that pawn ticket, as expressly entered in writing on that pawn ticket, was December 5, 1999. The 30-day grace period for that written pawn transaction extended through January 4, 2000.
*1083 Vera testified by affidavit in pertinent part as follows:
"2. On or before December 5, 1999, I called Leigh Moore at [The Money Tree] and told her that I was going to be short on the $250.00 that I needed to renew my pawn with her company.... I told Ms. Moore that I could make a double payment when I got my check in January. Ms. Moore told me that would be fine, just to be sure that I was there on or before January 4, 2000.
"....
"4. On Monday January 3, 2000, I received my Social Security check late in the afternoon. I called Ms. Moore and told her that I could come over that evening and bring her the $500.00 that I owed to renew my pawn. Ms. Moore said it was already getting late and they were preparing to close [The Money Tree], to just bring the money tomorrow.
"5. Before 12:00 p.m. on January 4, 2000, my husband and I drove to [The Money Tree] to renew my pawn. I handed Ms. Moore my Social Security check in the amount of $519.00 to pay the $500.00 I needed to renew my pawn. As she started to take my check, Jerry Higginbotham asked her to step back into the office where they had a conversation out of my hearing. When they returned from the office, Mr. Higginbotham said he had already repossessed my car and refused to take the $500.00 payment. He told me it would take $1600.00 to pick the car up within the next ten (10) days. I again asked him to take the $500.00 and let me take the car back with me that day....
"....
"7. On or about January 5, 2000, I returned to [The Money Tree], where I again asked Mr. Higginbotham to take the $500.00 and let me have my car back. He again refused....
"8. A couple of days after January 5, 2000, I called Mr. Higginbotham on the telephone and again implored him to take the $500.00 and to let me have my car back until my loan came in that was scheduled to do so in a few days. At that time he told me he had already sold my car to [a] man in Moody, Alabama.
"9. On January 13, 2000, I returned to [The Money Tree] and offered Ms. Moore and Mr. Higginbotham $1600.00 cash and demanded the return of my automobile. They refused to accept the $1600.00 and refused to return the automobile. On that date, the automobile was parked in [The Money Tree] parking lot."
The Money Tree maintained records for each of the pawn transactions entered by the Colemans together and then Vera singly. The records for the November 4, 1999 pawn transaction bear the notation, in pertinent part: "1-4 Repo'd car." The expression 1-4, which appears in the date column of the records, means January 4, 2000.

Issues, Law, and Analysis
Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P., and Dobbs v. Shelby County Econ. & Indus. Dev. Authority, 749 So.2d 425 (Ala.1999). The court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable doubts in favor of the nonmoving party. System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419 (Ala.1996). If substantial evidence in the record supports a cognizable claim pleaded by the plaintiff, the defendant is not due a summary judgment *1084 on that claim, even if the record also contains substantial countervailing evidence. See Hollingsworth v. City of Rainbow City, 826 So.2d 787 (Ala.2001); McGinnis v. Jim Walter Homes, Inc., 800 So.2d 140 (Ala.2001); Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala. 1999).
The Colemans argue that on December 5, 1999 Vera and Moore (acting for The Money Tree) orally agreed to extend Vera's title pawn which matured on that day for another 30 days on the condition that Vera pay a $500 double interest payment by January 4, 2000. Citing Duncan v. Rossuck, 621 So.2d 1313, 1315 (Ala. 1993), the Colemans argue that, although the pawn ticket expressly prohibits "[v]erbal agreements for additional days," the December 5 oral agreement between Vera and Moore extending the maturity date of Vera's title pawn is enforceable.
The defendants contend that the pawn ticket specifically prohibits oral agreements "granting [the Colemans] additional days to redeem the[ir] pawn." Brief, p. 18. Although the defendants contend that the Alabama Pawnshop Act, § 5-19A-1 et seq., Ala.Code 1975, governs the Colemans' pawn transactions, the defendants did not argue below and they do not argue here that the Pawnshop Act requires a written contract between a pledgor and a pawnbroker. Similarly, although the defendants' summary judgment motion itself denies the existence of an oral agreement between Vera and Moore extending the maturity date of Vera's pawn,
"`[m]otions and arguments of counsel are not evidence.' `[S]tatements in motions are not evidence and are therefore not entitled to evidentiary weight.' `[B]riefs submitted in support of motions are not evidence to be considered by the Court in resolving a summary judgment motion.'"
Fountain Finance, Inc. v. Hines, 788 So.2d 155, 159 (Ala.2000) (citations omitted). The only evidentiary material in the record on appeal consists of the pawn tickets executed by the Colemans together, the pawn tickets executed by Vera alone, the records maintained by The Money Tree, and Vera's affidavit testimony.

Duncan holds:
"[U]nder Alabama law a written agreement may be modified by a subsequent oral agreement of the parties, unless some statutory provision provides otherwise. Hall v. Integon Life Insurance Co., 454 So.2d 1338 (Ala.[1984]). This is so even where the contract contains a requirement that all modifications be in writing. Commercial Contractors, Inc. v. United States & Guaranty Co., 524 F.2d 944 (5th Cir.1975) (applying Alabama law)."
Duncan, 621 So.2d at 1315 (emphasis added). Accord Maddox v. Wescott, 156 Ala. 492, 496, 47 So. 170, 171 (1908):
"Although consent to subrent is required by the contract to be given in writing, this is for the benefit of the lessors; and it seems to be a well-established principle that it may be waived by parol, and that, if parol consent is established to the reasonable satisfaction of the court or jury trying the cause, it will work a waiver of the stipulation requiring written consent."
The rule allowing proof of an oral modification notwithstanding a requirement that all changes to a contract must be in writing is based upon the premise that a party who has included such a provision in a contract for that party's benefit can certainly waive that provision. Id. Proof of an oral modification therefore serves not only as proof of the modification itself but also as proof of a waiver of the requirement *1085 for a writing. Maddox. Accordingly, after entering a pawn transaction and memorializing it in a written pawn ticket which expressly provides that oral modifications are not binding, the pledgor and the pawnbroker can, nonetheless, effectively orally modify the terms of the pawn ticket.
The pawn tickets signed by the Colemans together and then by Vera singly expressly provide that a pledgor may repawn a vehicle in 30-day increments by agreement. Vera and Moore's oral extension of the December 5, 1999 maturity date of Vera's pawn transaction to January 4, 2000 in a 30-day increment would comply with the 30-day-increment requirement in the pawn ticket.
The defendants do not argue that they could repossess the Colemans' car on or before the maturity date of a pawn transaction. Nor do the defendants argue that they could repossess the Colemans' car during the 30-day grace period following the maturity date of a pawn transaction. Instead the defendants argue that they did not repossess the Colemans' car until after the grace period ended. The defendants argue that the repossession date was January 5, 2000. However, Vera's affidavit testimony and the January 4, 2000 notation on the records maintained by The Money Tree are substantial evidence that The Money Tree repossessed the Colemans' car on January 4, 2000, which was (1) the last day of the original grace period of the last pawn ticket (the November 1999 pawn ticket) as originally written, (2) the orally extended maturity date of that pawn transaction, and (3) the day before the beginning of the consequent new 30-day grace period.
To establish a breach-of-contract claim, a plaintiff must show "`(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages.'" State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 303 (quoting Southern Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala.1995) (citations omitted)). Vera's affidavit testimony is substantial evidence of the existence of a December 5, 1999 oral agreement between herself and The Money Tree extending the maturity date of Vera's last pawn ticket to January 4, 2000. Even if the defendants had submitted evidence disputing the existence of this oral extension, such countervailing evidence would not eliminate the Colemans' showing on this issue and therefore would not defeat the Colemans' opposition to summary judgment as it applies to this issue.
The Colemans presented substantial evidence that Vera tendered the required $500 double interest payment on the orally agreed January 4, 2000 date. The defendants' repossession of the Colemans' car on January 4, 2000 would constitute a breach of the alleged and evidentiarily supported December 5 oral agreement. Therefore, the trial court erred in entering summary judgment in favor of the defendants on the Colemans' breach-of-contract claim, and the Court of Civil Appeals erred in affirming the summary judgment in favor of the defendants on the Colemans' breach-of-contract claim.
"To establish conversion, a plaintiff must show a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property." Birmingham-Jefferson County Transit Auth. v. Arvan, 669 So.2d 825, 828 (Ala.1995) (emphasis added). Relying on Floyd v. Title Exchange & Pawn of Anniston, Inc., 620 So.2d 576 (Ala.1993), the defendants argue that they already constructively possessed the Colemans' *1086 car and that, therefore, they could not have converted the Colemans' car. Their reliance on Floyd is inapposite. First, Floyd does not adopt the Floyd trial judge's opinion that a pawnbroker's possession of the keys and an endorsed title certificate to a car constitutes the pawnbroker's constructive possession of the car itself. Second, the record does not contain substantial evidence that the defendants before us possessed an endorsed title certificate, much less the keys, to the Colemans' car. Third, Floyd does not hold that a pawnbroker can legally repossess a pledgor's vehicle on or before the maturity date of a pawn transaction or that a pawnbroker can legally repossess a pledgor's vehicle within the 30-day grace period following the maturity date of the pawn transaction. Floyd holds only that "an automobile certificate of title is `tangible personal property' within the meaning of the Alabama Pawnshop Act," and that "money-lending transactions involving the transfer of automobile certificates of title for the purpose of giving security are `pawn' transactions." Blackmon v. Downey, 624 So.2d 1374, 1376 (Ala.1993) (footnote omitted).
The Colemans presented substantial evidence that the defendants wrongfully took the Colemans' car, or wrongfully interfered with the Colemans' car, Arvan, supra, during the 30-day extended term of their pawn transaction with The Money Tree. Therefore, the trial court erred in entering summary judgment in favor of the defendants on the Colemans' conversion claim and the Court of Civil Appeals erred in affirming the summary judgment on the Colemans' conversion claim.
The Court of Civil Appeals correctly affirmed the summary judgment in favor of the defendants on the Colemans' fraud and tort-of-outrage claims. Accordingly, we affirm the portion of the judgment of the Court of Civil Appeals affirming the summary judgment on the Colemans' fraud and tort-of-outrage claims. We reverse that portion of the judgment of the Court of Civil Appeals affirming the summary judgment on the Colemans' breach-of-contract and conversion claims. We remand this cause to the Court of Civil Appeals for it to remand the cause to the trial court for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., concurs in the result.
MOORE, Chief Justice (concurring in the result).
I concur with the Court's affirming the trial court's summary judgment for the defendants on the plaintiffs' fraud and tort-of-outrage claims. I must also concur in its reversing the summary judgment for the defendants on the plaintiffs' conversion and breach-of-contract claims, because the defendants apparently did not present any evidence supporting their claim that no oral modification of the loan agreement occurred. Had the defendants presented such evidence, then the summary judgment on those claims could have been sustained.