959 So.2d 115 (2006)
PATTANS VENTURES, INC., d/b/a Pattan Title & Pawn
v.
Darryl WILLIAMS.
2040648.
Court of Civil Appeals of Alabama.
December 1, 2006.
Jeffrey L. Ingram of Galese & Ingram, P.C., Birmingham, for appellant.
*117 Bill Thomason and Clay J. Thomason of Thomason, Maples & Allsup, LLC, Bessemer, for appellee.

On Application for Rehearing
CRAWLEY, Presiding Judge.
This court's opinion issued on June 2, 2006, is withdrawn, and the following is substituted therefor.
Darryl Williams ("the pledgor") sued Pattans Ventures, Inc., doing business as Pattan Title & Pawn ("the pawnshop"), Nathaniel Ellis, Alabama Auto Adjusters, and several fictitiously named parties, alleging that his vehicle was wrongfully repossessed and sold and claiming as grounds for relief breach of contract, conversion, and unjust enrichment. The trial court entered a judgment; however, based upon a postjudgment motion filed by the pawnshop, the trial court amended its judgment. The trial court's amended judgment determined that the pledgor's claims of conversion of his vehicle and breach of contract against the pawnshop were meritorious, entered a judgment against the pawnshop on the conversion and breach-of-contract claims, and assessed damages in the amount of $39,000.[1] The trial court ruled in favor of Nathaniel Ellis on the pledgor's claims against him. The pledgor's claims against Alabama Auto Adjusters were dismissed without prejudice. The pledgor never substituted additional defendants for the fictitiously named parties in the complaint. Thus, the trial court's judgment is a final judgment. The pawnshop has timely appealed.

I. Factual Background
The trial court's judgment determined that the pledgor had purchased the vehicle in question, a 2001 BMW sport-utility vehicle, in April 2001, for the amount of $47,981.98. The Alabama Department of Revenue ("the department") issued the pledgor the certificate of title to the vehicle in May 2001.
On December 13, 2001, the pledgor pawned the title to the vehicle to the pawnshop for the amount of $700. At that time, the pledgor also executed a pawn ticket for that amount; however, as is customary for this type of transaction, the pledgor kept physical possession of the vehicle. In order to redeem the title to the vehicle, the pledgor was required to pay $875 within 30 days of the date of the issuance of the pawn ticket. The pawn ticket, signed by a representative of the pawnshop and by the pledgor, provides the following relevant contract terms:
"This pawn is for one month. The pawnshop charge is deemed earned, due and owing as of the date of the pawn transaction and a like sum shall be deemed earned due and owing on the same day of the succeeding month. `Any personal property pledged to a pawnbroker within this state is subject to sale or disposal when there has been no payment made on the account for a period of 30 days post maturity date of the original contract, and no further notice is necessary.' Pledgor shall present this ticket when redeeming the pledged goods. Pawnbroker agrees to return the pledged goods to the pledgor upon payment of the amount loaned plus pawnshop charge and any other lawful charges.

"Any person identified as pledgor or as authorized representative of the pledgor and presenting a pawn ticket to the *118 pawnbroker shall be entitled to redeem or repurchase goods described on the ticket. In the event pledged goods are lost or damaged while in the possession of the pawnbroker, it shall be the responsibility of the pawnbroker to replace the lost or damaged goods with like kinds of merchandise and proof of replacement shall be a defense to any prosecution. For the purpose of the provision, `lost' includes pledged goods that have been destroyed or have disappeared due to willful neglect that results in the pledged goods being unavailable for return to the pledgor."
(Emphasis added.)
Also on December 13, 2001, the pledgor executed a document styled "Bill of Sale of Motor Vehicle Pawned," which purported to evidence the sale of the vehicle to the pawnshop, with the sale to become effective if the pledgor failed to pay the $875 within 30 days.
Additionally, the pledgor executed a power of attorney, appointing Gabe Ellis, a representative of the pawnshop, as his attorney in fact for the purpose of applying for a new certificate of title and, among other things, placing a lien on the vehicle. The signature on the power-of-attorney document was not that of Gabe Ellis, however, but of James Bearden, an agent of the pawnshop. Other documents obtained from the department indicate that another power-of-attorney document was completed, apparently by the pawnshop, wherein Bearden was purportedly appointed to be the pledgor's attorney in fact. However, the trial court determined that the pledgor's purported signature on that document was an obvious forgery.
A January 25, 2002, application for a certificate of title to the vehicle filed with the department, which identified the pawnshop as a lienholder on the vehicle, was signed by Bearden, pursuant to the forged power-of-attorney document. In February 2002, the department issued a new certificate of title to the vehicle, indicating that the pawnshop was the first lienholder. That lien was released by Nathaniel Ellis, a representative of the pawnshop, on November 15, 2002, when the pawnshop took possession of the vehicle. The title document indicates that the vehicle was sold by the pawnshop on November 15, 2002, and that the title was subsequently reassigned in turn to three separate automobile dealers.
Nathaniel Ellis testified that the keys to the vehicle are with the vehicle and that he did not know the whereabouts of the vehicle. Nathaniel Ellis also testified that, at the time the pledgor pawned the title to the vehicle, he explained to the pledgor that the pawn ticket had to be redeemed within 30 days and that, if it was not redeemed within 30 days, the pledgor would have an additional 30 days to redeem it, but that, on the 61st day, title would pass to the pawnshop. Nathaniel Ellis claimed that the pledgor did not make or attempt to make any payments to the pawnshop.
The pledgor testified that he attempted to pay his pawn ticket 4 days before the 30-day pawn-transaction period expired. The pledgor stated that, despite the fact that he had enough cash to redeem his certificate of title, Nathaniel Ellis told him that he could not locate the certificate of title. According to the pledgor, Nathaniel Ellis added that, if the pledgor would pay the interest on the pawn ticket, the pawnshop would extend the time to pay the principal amount by another 30 days. The pledgor testified that he declined to pay only the interest and indicated that he was ready, willing, and able to pay the full amount of the pawn ticket upon Nathaniel Ellis's returning the certificate of title to him.
*119 Two weeks later, the pledgor testified, he again attempted to tender full payment of the pawn ticket. The pledgor stated that Nathaniel Ellis told him again that he could not locate the certificate of title but that the pledgor could pay the interest on the pawn ticket to extend the transaction for 30 days. The pledgor stated that he again refused the alternative of paying only the interest and demanded return of the certificate of title in return for his full payment. The pledgor testified that he periodically spoke with Nathaniel Ellis by telephone between January 13, 2002, and up to February 13, 2002, but that the situation remained the sameNathaniel Ellis claimed that he could not locate the certificate of title but offered to extend the transaction for 30 days if the pledgor would pay the interest due. The pledgor testified that he declined the offer each time. At the time the pawnshop took possession of the vehicle, about eight months after the pawn ticket had matured, the vehicle was valued at $39,000.
The trial court determined that the pawnshop had violated the Alabama Pawnshop Act, § 5-19A-1 et seq., Ala.Code 1975 ("the Act"), by selling the vehicle without waiting 30 days from the date it took physical possession of the vehicle. Specifically, the trial court stated:
"In construing the statute in order to determine the intent of the Legislature in the application of the provisions with regard to the pawn of automobile titles, the Court has considered Ala.Code § 5-19A-10(b)(1975), which addresses pledgor rights to redeem with regard to pledged tangible property, in para materia with Ala.Code § 5-19A-5(c) (1975), which addresses a pawnshop owners obligation to hold all purchased goods, including automobiles, for 21 days prior to disposing of them by sale or otherwise, as indicative of a legislative intent that a pledgor, having surrendered an item of personal property to a pawnbroker, should have a period of time after he has lost possession to redeem the property, thereby regaining possession of the property and satisfying his obligation to the pawnbroker.
"[The pawnshop], in disposing of [the pledgor's] vehicle by sale on the same date upon which [the pawnshop] came into possession of the tangible property, which was the subject of the pawn transaction is violative of the letter, if not the spirit of Ala.Code § 5-19A-10(b) (1975). The Court therefore finds that the resale of [the pledgor's] vehicle prior to the expiration of 30 days from the date that the said vehicle came into the possession of [the pawnshop] following the maturity date of the pawn transaction was in violation of the Alabama Pawnshop Act, was an interference with [the pledgor's] right to redeem and therefore supports [the pledgor's] claim for conversion against [the pawnshop] and breach of the pawn contract between [the pledgor] and [the pawnshop]."
The trial court concluded by stating that it was "reasonably satisfied of the truthfulness of [the pledgor's] claim for conversion of his motor vehicle and breach of contract," and it entered a "judgment for [the pledgor] and against [the pawnshop] for the conversion of [the pledgor's] said automobile and assess[ed] [the pledgor's] damages at the value of the said vehicle at the time of its taking, $39,000.00."

II. Discussion
The pawnshop argues in its brief to this court that the trial court erred as a matter of law in determining that the legislature intended § 5-19A-5(c), Ala.Code 1975, when read in conjunction with § 5-19A-10(b), Ala.Code 1975, to require a pawnshop to hold a pledgor's vehicle for 30 days after it takes possession of the vehicle, *120 even if more than 30 days have passed following the maturation of the pawn ticket.[2] In short, the pawnshop asserts that it already owned the vehicle in this case by operation of law when it took possession of the vehicle and, thus, that it could not be liable for conversion or breach of contract.
The pledgor argues that the 30-day period in which he could redeem his vehicle began to run from the time the pawnshop took possession of the vehicle, notas the pawnshop claimsfrom the time the pawn ticket matured.
Neither the trial court's judgment nor the parties on appeal address in significant detail what consequences could flow from the pawnshop's not providing the pledgor with the certificate of title when he offered to pay the required $875 before the end of the initial 30-day period during which he could redeem the vehicle pursuant to the terms of the pawn ticket. Ultimately we must remand this case for the trial court to reexamine the evidence and make further factual findingsfindings that were previously unnecessary for the trial court to make under its construction of the Act.
In this case the trial court made factual findings based upon the oral testimony at trial. However, the trial court did not specifically make a factual finding as to whether the pledgor actually made an offer of payment to the pawnshop before the expiration of the time he had to redeem his pawn ticket. Generally, when a trial court receives evidence ore tenus and makes no specific findings of fact, we must assume that the trial judge made those findings necessary to support the judgment. Diggs v. Diggs, 910 So.2d 1274, 1275 (Ala.Civ. App. 2005). Furthermore, we must view the evidence in a light most favorable to the prevailing party. Id. As noted above, however, in this case the result the trial court reached did not require a finding that the pledgor had made an offer to redeem his pawn ticket. Rather the trial court based its judgment upon a construction of several sections of the Act and focused upon what consequences result under those sections from the pawnshop's taking possession of the pledgor's vehicle and then reselling it the same day.
The portions of the Act relied upon by the trial court in determining that the pawnshop did not have a right to sell the pledgor's vehicle are § 5-19A-5(c) and § 5-19A-10(b). Section 5-19A-5(c), Ala. Code 1975, provides:
"All goods purchased by the pawnbroker except for automobiles, trucks, and similar vehicles shall be maintained on the premises by the pawnbroker for at least fifteen business days before the goods may be offered for resale. Automobiles, trucks, and similar vehicles shall be maintained on the premises for 21 calendar days."
Section 5-19A-10(b), Ala.Code 1975, provides:
"Pledged goods not redeemed on or before the maturity date if fixed and set out in the pawn ticket issued in connection with any transaction shall be held by the pawnbroker for 30 days following that date and may be redeemed or repurchased by the pledgor or seller within the period by the payment of the *121 originally agreed redemption price, and by the payment of an additional pawnshop charge equal to the original pawnshop charge."
In short, the trial court construed those sections of the Act together to conclude that the pledgor had a right to recover the value of the vehicle from the pawnshop because the pawnshop had violated the Act by selling the vehicle on the same day it took possession of the vehicle. Contrary to the trial court, we agree with the pawnshop concerning one argument: that the 30-day period in which the pledgor could redeem his vehicle began not on the day the pawnshop took possession of the vehicle, but on the day the pawn ticket matured.
Importantly, the mere violation of a statute by a party does not per se mean that a legal remedy is available to another party who is purportedly injured by that violation. See, e.g., Fox v. Bartholf, 374 So.2d 294, 295-96 (Ala. 1979)(stating that the elements of negligence per se based upon the violation of a statute requires (1) a determination that the statute was enacted to protect a class of persons that includes the litigant seeking to assert the applicability of the statute, (2) that the injury was of the type contemplated by the statute, (3) that the party charged with negligent conduct must have violated the statute, and (4) that the trier of fact must determine that the statutory violation proximately caused the injury).
As our supreme court has previously stated:
"The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute. Gholston v. State, 620 So.2d 719 (Ala. 1993). Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive. Words must be given their natural, ordinary, commonly understood meaning, and where plain language is used, the court is bound to interpret that language to mean exactly what it says. IMED Corp. v. Systems Engineering Associates Corp., 602 So.2d 344 (Ala. 1992)."
Ex parte State Dep't of Revenue, 683 So.2d 980, 983 (Ala. 1996). However, when the meaning of a statute is not clear on its face, the court must determine the meaning of the statute by finding the intent of the legislature. Tate v. Teague, 431 So.2d 1222, 1225 (Ala. 1983). "Under the rules of statutory construction, we must consider the statute as a whole and must construe the statute reasonably so as to harmonize the provisions of the statute." McRae v. Security Pac. Hous. Servs., Inc., 628 So.2d 429, 432 (Ala. 1993). "The reason and necessity for a statute are relevant to its interpretation." Id. at 431 (citing Ex parte Birmingham Bd. of Educ., 601 So.2d 93 (Ala. 1992)).
In this case the violation of § 5-19A-5(c), Ala.Code 1975, which requires a vehicle to be maintained on the premises of a pawnshop for 21 days, does not clearly indicate that the original owner of the vehicle has a remedy for the failure to comply with that requirement or, if the owner does have a remedy, that it would include recovering the complete value of the vehicle from the pawnshop. In this case the trial court did not rely on a factual finding that the pledgor made an offer to pay the pawnshop before the expiration of the pawn ticket. Instead the trial court construed the Act in such a manner as to provide the pledgor a remedy for its violation, despite the fact that the pledgor had not in fact paid to redeem the vehicle (although he may have offered to do so). The pawnshop merely took possession of a vehicle that legally belonged to it. See § 5-19A-6, Ala.Code *122 1975 (providing that "[p]ledged goods not redeemed within 30 days following the originally fixed maturity date shall be forfeited to the pawnbroker and absolute right, title, and interest in and to the goods shall vest in the pawnbroker").[3]
The Act, when examined in its entirety, does not indicate that the pledgor has any remedy for the violation of § 5-19A-5(c). Several other sections of the Act indicate that the legislature intended for the Supervisor of the Bureau of Loans of the State Banking Department to have the power to enforce the Act. Those sections provide:
"(a) In addition to any other penalty which may be applicable, any licensee who willfully violates this chapter or who willfully makes a false entry in any record specifically required by this chapter shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine not in excess of $1,000.00 per violation or false entry.
"(b) Compliance with this chapter shall be enforced by the supervisor who may exercise any authority conferred by law.

"(c) When the supervisor has reasonable cause to believe that a person is violating this chapter, the supervisor, in addition to and without prejudice to the authority provided elsewhere in this chapter, may enter an order requiring the person to stop or to refrain from the violation. The supervisor may sue in any circuit court of the state having jurisdiction and venue to enjoin the person from engaging in, continuing the violation, or from doing any act in furtherance of the violation. In an action, the court may enter an order or judgment awarding a preliminary or permanent injunction."
§ 5-19A-17, Ala.Code 1975 (emphasis added).
"(a) The supervisor may, after notice and hearing, suspend or revoke any license upon a finding that:
"(1) The licensee, either knowingly or without the exercise of due care to prevent the same, has violated this chapter."
§ 5-19A-13, Ala.Code 1975.
The view that, under the circumstances presented here, the pledgor does not have a private remedy for the violation of § 5-19A-5(c) of the Act is consistent with Ex parte Coleman, 861 So.2d 1080 (Ala. 2003). In that case our supreme court determined that the pawnshop in that case had taken possession of the pawned vehicle within the 30-day period following the maturity date of the pawn ticket. Ex parte Coleman, 861 So.2d at 1085. The court calculated the last day on which the pledgor in that case could redeem his vehicle as being the 30th day following the maturity date of the pawn ticket. By doing so, our supreme court implicitly held that the pawnshop was not required first to take possession of the vehicle and then to give the pledgor a 30-day grace period in which to redeem the vehicle. Thus, the argument that the pawnshop in this case did not provide the pledgor with a 30-day grace period in which to redeem his vehicle is unconvincing, particularly when the pawnshop took possession of the vehicle in November 2002, at least 8 months after the maturity date of the pawn ticket and 7 *123 months after the end of the grace period following the maturation of the pawn ticket.
Finally, in response to Judge Thompson's writing concurring in the result only, we note that the parties made sufficient arguments to the trial court regarding the construction of the Act to preserve this issue for appeal. Furthermore, in the pawnshop's brief to this court, it makes several arguments based upon § 5-19A-5, Ala.Code 1975. In our view, this matter has adequately been presented to this court.

III. Conclusion
Therefore, we conclude that although the pawnshop did violate the Act by selling the vehicle the same day it took possession of it, a legal remedy does not exist in favor of the pledgor for that violation. Instead, it appears that our legislature intended that the Supervisor of the Bureau of Loans of the State Banking Department possess the power to enforce compliance with § 5-19A-5(c), Ala.Code 1975. In light of our analysis, we reverse the judgment of the trial court concerning its construction of the Act. By doing so, we do not mean to indicate which party should ultimately prevail in this case; however, we note that the pledgor has stated potentially valid breach-of-contract and conversion claims. Therefore, we remand this case to the trial court so that it may reconsider the evidence and determine whether the pledgor in fact attempted to tender the required payment to the pawnshop either before the expiration of the pawn ticket or before the grace period had elapsed.
APPLICATION GRANTED; OPINION OF JUNE 2, 2006, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED WITH INSTRUCTIONS.
MURDOCK and BRYAN, JJ., concur in the result, without writing.
THOMPSON, J., concurs in the result only, with writing, which PITTMAN, J., joins.
THOMPSON, concurring in the result only.
I do not agree, at least at this time, with that part of the main opinion concluding that § 5-19A-5, Ala.Code 1975, does not afford the pledgor a remedy. I believe that such decisions should be made by this court only when litigants with a stake in the outcome of the decision have advocated their positions on the issue to the trial court and to this court. In this case, the parties did not make arguments pertaining to that issue either before this court or before the trial court. I also disagree with the main opinion's rationale for that conclusion, specifically, its construction of our supreme court's opinion in Ex parte Coleman, 861 So.2d 1080 (Ala. 2003). For these and other reasons, I concur in the result only.
PITTMAN, J., concurs.
NOTES
[1] It is clear from our review of the record that the pledgor's unjust-enrichment claim was implicitly denied by the trial court. See generally 66 Am.Jur.2d Restitution and Implied Contracts § 24 (2001) ("[A]n action for unjust enrichment cannot lie in the face of an express contract.").
[2] We note that in Floyd v. Title Exchange & Pawn of Anniston, Inc., 620 So.2d 576 (Ala. 1993), and subsequently in Blackmon v. Downey, 624 So.2d 1374 (Ala. 1993), our supreme court held that a certificate of title to an automobile is "tangible personal property" within the meaning of the Act. Blackmon, 624 So.2d at 1376. Thus, this type of transaction involves a "pledged good" as defined in the Act, § 5-19A-2 (6), Ala.Code 1975, and is properly covered under the Act, not under Alabama's Small Loan Act. Floyd, 620 So.2d at 579.
[3] We also note that the fact that the pledgor's signature was forged on the power-of-attorney document, which was used to formally establish the pawnshop as a lienholder on the vehicle, does notunder the arguments presented in this caseaffect the pawnshop's right to take possession of the vehicle. See Harkness v. EZ Pawn Alabama, Inc., 724 So.2d 32, 33 (Ala.Civ.App. 1998)(noting that a secured party's rights over the collateral as against the debtor are unaffected by failure to perfect the security interest).