[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 21-11476
Non-Argument Calendar

_____

D.C. Docket No. 2:20-cv-00416-WKW,
Bkcy No. 2:19-bk-30762-WRS

In re: LEVIA E. WOMACK,

Debtor.

_____

TITLEMAX OF ALABAMA, INC.,

Plaintiff-Appellant,

versus

LEVIA E. WOMACK,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(August 30, 2021)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and BRANCH, Circuit
Judges.

PER CURIAM:

This appeal presents the issue whether a debtor who declares bankruptcy under Chapter 13 of the Bankruptcy Code before defaulting on a title loan under the Alabama Pawnshop Act, Ala. Code § 5-19A-1 *et seq.*, can modify the pawnholder's rights in the plan of reorganization, 11 U.S.C. § 1322(b)(2). TitleMax of Alabama, Inc., challenges an order confirming Levia Womack's plan of reorganization on the ground that, after she filed for bankruptcy, her title loan matured, she forfeited her ownership in the vehicle that secured her loan by failing to exercise her statutory right of redemption, and title to the vehicle vested in TitleMax. *See* Ala. Code §§ 5-19A-6, 5-19A-10. The district court affirmed the judgment of the bankruptcy court that Womack held title to and the right to possess her vehicle while TitleMax remained a security creditor whose interest in the vehicle could be modified in Womack's plan of reorganization. We affirm.

On March 1, 2019, Womack pledged her vehicle to TitleMax in exchange for a loan of $3,792.40. Their contract stated that Womack had to pay "the principal sum plus a Pawnshop Charge of $416.78 . . . on 3/31/19 (the '*Maturity Date*')" and that she "grant[ed] [TitleMax] a security interest in the Vehicle and the Title." By the terms of the contract, "[i]f [Womack] fail[ed] to timely pay any amount payable hereunder when due, then [her] account will be in default" and TitleMax "may take possession of the Vehicle . . . ." The contract provided that,

2

"[i]f [Womack] fail[ed] to redeem the Vehicle within 30 days following the Maturity Date . . . and [she] d[id] not pay accrued and outstanding charges and enter into a new Pawn Ticket and Security Agreement with [TitleMax], then the Vehicle shall be forfeited to and absolute right, title, and interest in and to the Vehicle shall vest in [TitleMax]." Womack retained possession of the vehicle, and TitleMax recorded a lien on the title of the vehicle.

Under the Alabama Pawnshop Act, a pawn transaction gives a pawnbroker "a lien on the pledged goods pawned for the money advanced and the pawnshop charge owed, . . . subject to the rights of other persons who have an ownership interest or prior liens in the pledged goods." Ala. Code § 5-19A-10(a). The pledgor has "no obligation to redeem pledged goods or make any payment on a pawn transaction." *Id.* § 5-19A-6. If "[p]ledged goods [are] not redeemed on or before the maturity date . . . fixed and set out in the pawn ticket . . . the pawnbroker [must hold the goods] for 30 days following that date . . . [for] rede[mption] or repurchase[] by the pledgor . . . ." *Id.* § 5-19A-10(b). "Pledged goods not redeemed within 30 days following the originally fixed maturity date shall be forfeited to the pawnbroker and absolute right, title, and interest in and to the goods shall vest in the pawnbroker." *Id.* § 5-19A-6.

On March 20, 2019, 11 days before her pawn contract matured, Womack filed a petition for bankruptcy. She listed her vehicle as an asset of her estate and

TitleMax as a secured creditor, and she proposed in her plan of reorganization to repay TitleMax over the life of the plan. TitleMax objected and argued that "the only right held by [Womack's estate] under Alabama law [was] the right to *redeem* the pledged property." TitleMax argued that, like the debtor in *In re Northington*, 876 F.3d 1302 (11th Cir. 2017), Womack's "filing of [a] bankruptcy petition did not freeze the statutory right of redemption . . . and after the expiration of the 60-day period [to redeem under state law, Ala. Code § 5-19A-10, and the Bankruptcy Code, 11 U.S.C. § 108, she] automatically forfeited the [pawned] vehicle and absolute right, title and interest [to the vehicle] vested in TitleMax."

The bankruptcy court overruled the objection of TitleMax and confirmed Womack's plan. The bankruptcy court determined that Womack had not defaulted on her loan and owned the pawned vehicle when she filed her bankruptcy petition and that "[t]he pawn contract and certificate of title listing TitleMax as the lienholder provided [it] with a perfected security interest in the vehicle," which Womack could modify in her plan of reorganization. The bankruptcy court distinguished Womack's case from *Northington*, where the pawn contract matured and the redemption period commenced running before the debtor filed for bankruptcy and transferred to the estate only a right to redeem, which lapsed and resulted in the rights to the pawned vehicle vesting automatically in the pawnbroker under "Georgia's pawn statute" and the asset "dropping out of the

bankruptcy estate." 876 F.3d at 1306. The bankruptcy court explained that, because Womack's "pawn contract . . . had not matured as of the petition date and [she] held legal title to the pawned vehicle, not mere redemption rights" when she filed her bankruptcy petition, the redemption period had "no application to [her] pawn contract," her "legal title interest and possessory interest [in the vehicle] entered the bankruptcy estate," and she was "entitled to modify TitleMax's secured claim under 11 U.S.C. § 1322(b)(2)."

The district court affirmed. It determined and TitleMax conceded that Womack owned the pawned vehicle when she filed for bankruptcy and that the vehicle became property of the estate. The district court ruled that, unlike the debtor in *Northington*, whose "conditional right to possess and the right to redeem" became property of the bankruptcy estate that "could be converted to a more substantial and permanent right, ownership, only by the affirmative act of redemption," Womack was the "'owner of the vehicle,' not its mere possessor" and the "ownership interest" her bankruptcy estate assumed "lacked the dynamism that would cause it to leave the estate over time." The district court ruled that applying *Northington* to Womack's situation "would wrongly render the date of default irrelevant with respect to the bankruptcy estate—and therefore would fail to recognize that the parties' property interests change when that date passes."

Under the Bankruptcy Code, "[p]roperty of the estate is defined broadly to include 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *In re Lewis*, 137 F.3d 1280, 1283 (11th Cir. 1998) (quoting 11 U.S.C. § 541(a)(1)). "[T]he term 'commencement' means the date on which the debtor filed [her] bankruptcy petition." *Northington*, 876 F.3d at 1309. "[W]hether a debtor's interest constitutes property of the estate is a federal question," but "the nature and existence of the debtor's right to property is determined by looking at state law." *Lewis*, 137 F.3d at 1283 (internal quotation marks omitted). So to resolve whether Womack had an interest in her pawned vehicle that became property of her estate, we must examine the interplay between the pawn contract, Alabama law, and the Bankruptcy Code. And we review that issue of law *de novo*. *Northington*, 876 F.3d at 1307.

Womack's contract with TitleMax states that, "[i]f [she] fails to timely pay any amount . . . *when due*, *then* [her] account will be in default," and TitleMax "may take possession" of the pawned vehicle, which triggers the period to redeem. (Emphasis added.) Consistent with caselaw interpreting the Alabama Pawnshop Act, the contract provides that it is only "[u]pon the debtor's default . . . [that] title and right of possession pass to the creditor . . . ." *See Am. Nat'l Bank & Tr. Co. of Mobile v. Robertson*, 384 So. 2d 1122, 1123 (Ala. Civ. App. 1980); *see also Complete Cash Holdings, LLC v. Fryer*, 297 So. 3d 1223, 1225 (Ala. Civ. App.

6

2019) (stating that a pawnbroker has no remedy under the Pawnshop Act until the borrower defaults on the loan). And under the Act, "the 30–day period . . . to redeem [a] vehicle beg[ins] . . . on the day the pawn ticket mature[s]," not before. *Pattans Ventures, Inc. v. Williams*, 959 So. 2d 115, 121 (Ala. Civ. App. 2006). As a result, a pawnbroker's right to title and to possession of a pawned vehicle ripens only on *expiration* of the redemption period; until that day, the pawnbroker is a "lienholder" who "is entitled [only] to the amount of its interest in the automobile." *State ex rel. Morgan v. Thompson*, 791 So. 2d 977, 978 (Ala. Civ. App. 2001).

"[T]he Bankruptcy Code takes an estate's constituent property interest as it finds them." *Northington*, 876 F.3d at 1314. When Womack filed for bankruptcy, 11 days remained for her to repay TitleMax. So on "commencement of [Womack's bankruptcy] case," 11 U.S.C. § 541(a)(1), her pawn contract had not matured and she owned rights to the title and to possess her vehicle. Short of the date of default, "title and right of possession [had yet to] pass to [TitleMax]," *see Am. Nat'l Bank & Tr.*, 384 So. 2d at 1123, to trigger the period to redeem the vehicle, *see Pattans Ventures*, 959 So. 2d at 121. And TitleMax concedes that Womack's rights to the title, to possess, and of actual possession of her pawned vehicle became property of her bankruptcy estate.

Womack's fixed interest in her vehicle is distinguishable from the contingent interest that the debtor had in *Northington*. The debtor in *Northington*

7

"filed a Chapter 13 bankruptcy petition . . . [after he] defaulted on [his] loan by failing to repay it on time and . . . shortly before expiration of the redemption period." 876 F.3d at 1305. So the property of the debtor's estate consisted only of a right to redeem his pawned vehicle. Under the Georgia pawn law, which is materially indistinguishable from the Alabama Pawnshop Act, if the debtor's estate failed timely to redeem the vehicle, it would "be automatically forfeited to the pawnbroker by operation of law, and any ownership interest of the [debtor] . . . [would] automatically be extinguished as regards the pledged item." Ga. Code § 44-14-403(b)(3).

In contrast with the debtor in *Northington*, Womack enjoyed the benefit of the automatic stay. In *Northington*, because the debtor transferred his vehicle to the bankruptcy estate after the period to redeem commenced running, the Bankruptcy Code extended his redemption period "for a finite term of 60 days." 876 F.3d at 1306, 1313 (discussing 11 U.S.C. § 108(b)). The debtor could not avail himself of the automatic stay, 11 U.S.C. § 362(a), in *Northington*, because "anything temporarily stayed under the specific language of section 108(b) [can]not [be] indefinitely stayed by the more general language of section 362(a)." 876 F.3d at 1313. But the statutory right to redeem in the Alabama Pawnshop Act, Ala. Code § 5-19A-6, and the extension of time under the Code, 11 U.S.C. § 108(b), never applied to Womack because her vehicle became property of the estate. As a result,

8

Womack's bankruptcy petition "operate[d] as a stay" to prevent any action by TitleMax to "obtain possession of property of the estate," to "enforce" its pre-petition lien, or to "collect, assess, or recover" any pre-petition claim. *See id.* § 362(a)(3)–(5).

Unlike the debtor in *Northington*, Womack had an interest in her vehicle that she could modify in her Chapter 13 plan. In *Northington*, the debtor never invoked his right to redeem and forfeited his legal interest in the pawned vehicle. 876 F.3d at 1309–10. Because the debtor's contingent rights to title of and to possess his vehicle vested automatically in the pawnbroker, Ga. Code § 44-14-403(b)(3), the asset "dropped out of the bankruptcy estate," and no property interest existed for the debtor to modify. *Northington*, 876 F.3d at 1306. But the automatic stay, 11 U.S.C. § 362(a) (3)–(5), froze the interest of TitleMax as a lienholder with a secured interest in Womack's vehicle, *see* Ala. Code § 5-19A-10(a), for "the amount of its interest in the automobile," *Thompson*, 791 So. 2d at 978. And Womack, as a Chapter 13 debtor, could "modify the rights of [TitleMax, as a] holder[] of [a] secured claim[]." *See* 11 U.S.C. § 1322(b)(2). The district court did not err.

We **AFFIRM** the judgment confirming Womack's plan of reorganization.