[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 21-11457
Non-Argument Calendar

_____

D.C. Docket No. 1:20-cv-00133-JB-B,
Bkcy No. 1:19-bk-12443

In re: CHRISTOPHER DAWAN ELDRIDGE,

Debtor.

_____

CHRISTOPHER DAWAN ELDRIDGE,

Plaintiff-Appellant,

versus

TITLE MAX OF ALABAMA, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(September 10, 2021)

Before JILL PRYOR, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Christopher Eldridge, a debtor in bankruptcy, appeals an order releasing a Jeep Grand Cherokee as property of his bankruptcy estate. TitleMax of Alabama, Inc., filed a motion in the bankruptcy court arguing that it owned the car, the bankruptcy court agreed, and the district court affirmed. After careful review, we also affirm.

## BACKGROUND

Eldridge pawned his car's certificate of title to TitleMax of Alabama in 2015 for $1,800. In Alabama, "money-lending transactions involving the transfer of automobile certificates of title for the purpose of giving security are 'pawn' transactions." *Blackmon v. Downey*, 624 So. 2d 1374, 1376 (Ala. 1993).

The pawn agreement did not require Eldridge to repay the loan. Instead, the agreement allowed Eldridge to forfeit the car's title, redeem the title by repaying the loan within 30 days (i.e., the loan's maturity date), redeem the title by paying a fee and repaying the loan within 60 days, or extend the deadline to redeem the title by paying a fee within 60 days and renewing the agreement. The "pawn ticket" explained that the "Pledged Goods not redeemed on or before the Maturity Date, shall be held by us for 30 days following that date and may be redeemed or repurchased by you within the period by the payment of the redemption price (the

2

amount disclosed as the Total of Payments above), plus the payment of an additional pawnshop charge." The agreement further provided that "Pledged Goods not redeemed within 30 days following the Maturity Date shall be forfeited to us and absolute right, title, and interest in and to the goods shall vest in us, unless you request and we agree to enter into a new pawn ticket, in which case you will retain title to the Pledged Goods." The upshot is that, if Eldridge did nothing for 60 days, the car's title and, with it, the car would become TitleMax's property.

Eldridge timely renewed the pawn agreement several times. But on July 26, 2016, the pawn agreement lapsed. Nonetheless, because Eldridge did not want to lose his car, he asked TitleMax to allow him to renew the agreement late. The original "pawn ticket" and all subsequent pawn tickets provided that TitleMax "may waive or delay enforcing [its] rights without losing them." TitleMax agreed to the late renewal and charged Eldridge the standard renewal fee and issued another "pawn ticket" on July 29, 2016.

Eldridge continued to renew the agreement—sometimes on time and sometimes late—until 2019. There is no evidence that his renewal fee or renewal documents changed based on whether his renewal was timely or late. His final 60-day period expired on June 2, 2019.

Eldridge filed for bankruptcy on July 18, 2019. In his proposed Chapter 13 plan, he listed the car as his property and TitleMax as a secured creditor with a lien

3

on the car. He proposed to repay TitleMax's original loan in monthly installments over the life of the plan. TitleMax objected to the plan and filed a motion to declare the car exempt from the automatic stay. It argued that it owned the car by operation of law because Eldridge had failed to redeem or renew the pawn agreement by June 2, 2019. Eldridge argued that the original pawn transaction lapsed in 2016, and TitleMax sold the car to him subject to a lien. After an evidentiary hearing, the bankruptcy court agreed with TitleMax, Eldridge appealed, and the district court affirmed.

Eldridge timely appealed to this Court. Because the bankruptcy court's order is a final judgment, we have jurisdiction. *See In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989).

## STANDARD OF REVIEW

When a district court affirms a bankruptcy court's decision, we review the bankruptcy court's decision, applying the same standards of review as the district court. *L. Sols. of Chi. LLC v. Corbett*, 971 F.3d 1299, 1304 (11th Cir. 2020). We review the bankruptcy court's legal conclusions *de novo* and its findings of fact for clear error. *See In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir. 1990).

## DISCUSSION

Eldridge argues that the bankruptcy court should have denied TitleMax's motion because the car was part of his bankruptcy estate. Section 541 of the

4

Bankruptcy Code specifies the property interests that make up a bankruptcy estate. 11 U.S.C. § 541. In relevant part, Section 541 states that a debtor's estate comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* at (a)(1). So, if title to the car had already passed to TitleMax at the time of the bankruptcy filing, then the bankruptcy court was correct to grant TitleMax's motion.

Because state law determines property rights in bankruptcy, whether TitleMax owned the car's title when Eldridge filed for bankruptcy turns on Alabama pawnshop law. Alabama law defines a "pawn transaction" as "[a]ny loan on the security of pledged goods or any purchase of pledged goods on condition that the pledged goods are left with the pawnbroker and may be redeemed or repurchased by the seller for a fixed price within a fixed period of time." Ala. Code § 5-19A-2(3). In a pawn transaction, the debtor does not promise to pay anything going forward and has no personal liability for the loan. *See* Ala. Code § 5-19A-8(7) (prohibiting pawn agreement from "requiring the personal liability of a pledgor or seller"); *Id.* § 5-19A-6 ("A pledgor shall have no obligation to redeem pledged goods or make any payment on a pawn transaction."). Instead, the pawnshop has only the pawned collateral to pay off its loan, which it owns by operation of law if the debtor does not redeem the collateral by some predetermined time. Specifically, Alabama law provides that pawned "goods not redeemed within 30 days following the originally

5

fixed maturity date shall be forfeited to the pawnbroker and absolute right, title, and interest in and to the goods shall vest in the pawnbroker." Ala. Code § 5-19A-6.

If the parties engaged in a "pawn transaction," Eldridge's car became TitleMax's car when he failed to redeem it in 2019, before he filed for bankruptcy. *Cf. In re Northington*, 876 F.3d 1302, 1311 (11th Cir. 2017). No one disputes that their relationship began as a "pawn transaction." TitleMax and Eldridge signed a pawn agreement, Eldridge paid a pawn fee, and TitleMax loaned Eldridge some money and took the title to his car as collateral. But Eldridge argues that the parties' relationship changed in 2016 when the pawn agreement lapsed without being timely renewed. *See Cosby v. Cash Pawn Shop, Inc.*, 702 So.2d 175 (Ala. Civ. App. 1997) (authorizing renewals during the redemption period of a pawn agreement). At that point, Eldrige argues, TitleMax owned the car's title by operation of law, and the parties' relationship became something other than a pawn transaction.

We agree with the bankruptcy court and the district court that the parties' relationship remained a pawn transaction even after the belated renewal. Specifically, we see the parties' 2016 agreement as a waiver of TitleMax's ownership right in the car's title followed by a new pawn agreement. There is no question that, on July 27, 2016, TitleMax owned the absolute right, title, and interest in and to the car's title. Under Alabama law, Eldridge "had no rights in the car, possessory or otherwise." *Northington*, 876 F.3d at 1315. But, on July 29, 2016,

6

when Eldridge requested and TitleMax agreed to extend the pawn agreement, both parties mutually waived Eldridge's forfeiture, TitleMax released its claim to an ownership interest in the vehicle, and Eldridge renewed the pawn agreement for another fixed period. This transaction happened again several times, where TitleMax allowed Eldridge to renew the pawn agreement for a fee after he had otherwise lost any right to the car.

Eldridge argues that the 2016 transaction and the other belated renewal transactions are best viewed as sales that left TitleMax with a lien on the car. We disagree. The text of the parties' agreements and their conduct establish that both parties intended the 2016 transaction to be treated as a pawn transaction, not a sale secured by a lien. The 2016 agreement and all subsequent agreements were standard pawn agreements. Under these agreements, Eldridge had no obligation to make any payments and was free to give up the car's title and walk away without personal liability for repaying the loan. Each transaction was for a fixed 30-day period followed by an additional 30-day redemption period. And TitleMax maintained possession of the certificate of title throughout. These are the key attributes of a pawn transaction under Alabama law. *See* Ala. Code § 5-19A-2(3) & 6.

Finally, Eldridge argues that Alabama law forbids TitleMax from waiving or releasing its ownership interest as part of a pawn transaction.[1] The general rule in

---

[1] Eldridge also argues that these transactions are prohibited acts under the Alabama Pawnshop Act

Alabama and elsewhere is that "[a] party may waive any provision, either of a contract or of a statute, intended for his benefit." *Shutte v. Thompson*, 82 U.S. 151, 159 (1872). *See, e.g., Lay v. State*, 82 So.3d 9, 13 (Ala. Crim. App. 2011). Here, the automatic right of ownership—in both the statute and the contract—is a provision that benefits TitleMax, which it can freely waive absent an express prohibition. And we discern nothing in Alabama law that voids a pawn transaction because a pawnshop waives or releases its statutory or contractual rights. The relevant statute prohibits pawnshops from reducing the minimum 30-day period for a pawn transaction or the additional redemption period of 30 days. Ala. Code § 5-19A-8(7). But the statute does not forbid mutual agreements to extend these periods for the debtor's benefit. *See Cosby,* 702 So. 2d at 175. Although Alabama law expressly identifies two actions that void a pawn transaction (charging excessive interest and operating without a license), neither are relevant here. Ala. Code § 5-19A-7(b) & 13(e).

In short, we conclude that the relationship between Eldridge and TitleMax started as a pawn transaction and concluded as a pawn transaction. Accordingly, the bankruptcy court correctly granted TitleMax's motion and declared the car's title to be TitleMax's property at the time Eldrige filed for bankruptcy.

---

for which TitleMax could be fined or lose its pawnshop license. *See* Ala. Code § 5-19A-8. We take no position on that question. *See Pattans Ventures, Inc. v. Williams*, 959 So. 2d 115, 123 (Ala. Civ. App. 2006) (holding that the power to enforce the Alabama Pawnshop Act lies with the State Banking Department, not private parties).

## CONCLUSION

We **AFFIRM** the district court.